IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TONY EARL HOPES | * | |
| Plaintiff, | | |
| | * | |
| v. | | CIVIL ACTION NO: RDB-04-2963 |
| | * | |
| JAMES G. ROCHE, | | |
| Secretary of the | * | |
| UNITED STATES DEPARTMENT OF | | |
| THE AIR FORCE, | * | |
| Defendant. | | |

*    *    *    *    *    *    *    *    *    *    *    *    *

## **MEMORANDUM OPINION**

Plaintiff Tony Earl Hopes is an African-American male who is employed by the Defense

Commissary Agency ("DeCA").  Hopes resides in Maryland.  DeCA is an agency of the United States

Department of Defense.  Neither DeCA nor the United States Department of Defense are named as

defendants in this action.  Rather, the only named Defendant in this action is James G. Roche, in his

capacity as Secretary of the United States Department of the Air Force ("Air Force").  Throughout

most of his employment with DeCA, Hopes worked as a meat cutter in the DeCA-operated

commissary  on Andrews Air Force Base ("Andrews") in Prince George's County, Maryland.  Hopes

also worked briefly as a meat cutter at a DeCA commissary on Bolling Air Force Base ("Bolling") in

Washington, D.C.  The instant lawsuit stems from a decision by the respective commanders of

Andrews and Bolling to bar Hopes from those facilities after a report was issued indicating that Plaintiff

has an extensive criminal record.  The "barment" decisions effectively prevented Plaintiff from

performing his job for a period of several months.  Plaintiff filed a one-Count Complaint in this Court on

September 15, 2004, alleging employment discrimination case under Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.*  Defendant filed a

Motion for Summary Judgment on December 3, 2004 as to the Title VII claim.    In response to

Defendant's Motion for Summary Judgment, Plaintiff filed an Amended Complaint on January 3, 2005,

in which he asserted four additional causes of action against Defendant: tortious interference with

contractual relations under Maryland law (Count II), violation of the Fifth and Fourteen Amendments to

the United States Constitution (Count III), intentional discrimination under 42 U.S.C. § 1981 (Count

IV), and racial discrimination under the Maryland Constitution (Count V).  Shortly thereafter, on

January 3, 2005, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.  Both of Defendant's Motions have been fully

briefed, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that

follow, both of Defendant's Motions will be GRANTED.

## I.    <u>Background</u>

DeCA is an independent federal agency which operates 274 military commissaries on various

military installations throughout the world.  (Koren Decl. ¶ 3.)  Although the agency administers

commissaries on bases for the Air Force, and the other services branches, the agency is a separate

entity from those branches.  (*Id.*)

On July 14, 2002, a DeCA employee was murdered in a DeCA commissary on Andrews.  The

Federal Bureau of Investigation ("FBI") and the Air Force Office of Special Investigations ("AFOSI")

investigated the murder.  As part of that investigation, the investigators accessed criminal history reports

on all employees and contractors from the National Crime Information Center ("NCIC") database.

(Brig. Gen. Spears Decl.at ¶ 3.)  Based upon those reports, the investigators identified commissary

2

employees or contractors with records of dangerous or extensive criminal activity and forwarded the names of those individuals to Andrews' commander, Brigadier General Glenn Spears.  (*Id.* at ¶ 4.)  Acting on the information contained within the NCIC reports, General Spears ultimately barred approximately 15 DeCA personnel from Andrews.  (*Id.*)  Hopes was among the barred personnel, as his NCIC report indicated that he had engaged in felony burglary, aggravated arson, and possession of a controlled dangerous substance with intent to distribute on school property.  (*Id.*)  Specifically, General Spears signed the barment order for Hopes on April 1, 2003.  (*Id.*)   Pursuant to an agreement between officials at the two installations, officials at Andrews alerted the appropriate individuals at Bolling that Hopes had been barred from Andrews in light of his extensive criminal history.  (Col. Chambers Decl. at ¶ 3.)  In response to that notification, Colonel William Chambers signed an order barring Hopes from Bolling on April 3, 2003.

When Hopes received notice of the Bolling barment, he contacted DeCA and requested that he be placed on annual leave until his leave was depleted.  (Koren Decl. ¶ 8.)  His request was granted.  (*Id.*)  After Hopes' annual leave was depleted, his status was changed to "absent" status whereby he was no longer paid a salary.  (*Id.*)  Hopes protested the barment immediately upon being notified thereof.  He claims that he told his supervisors and various officials at Bolling that he had never been arrested, and that he had not committed any of the offenses attributed to him on the NCIC report.  (Hopes Aff. at ¶ 4.)  In an effort to prove his innocence, Hopes agreed to be fingerprinted by Air Force officials on May 27, 2003.  (*Id.*)  He did this so that the fingerprints could be submitted to the FBI for comparison with the fingerprints associated with the NCIC report implicating him in the numerous crime listed thereon.  (*Id.*)  However, on July 17, 2003, Hopes learned that his fingerprints had not been

submitted to the FBI for comparison.  (*Id.* at ¶ 5.)  According to Hopes, this signaled the government's "unwillingness" to clear his name, which he contends was based upon his race.  (*Id.* at ¶ ¶ 6-8.)

On July 16, 2003, the day before he claims that he realized that the government was discriminating against him,  Hopes contacted an Equal Employment Opportunity ("EEO") counselor at Bolling to complain that the barment decision was racially motivated.  Shortly thereafter, in September of 2003, Hopes filed a formal complaint with the EEO office at Bolling alleging that the decision to bar him from Bolling constituted race-based discrimination.  The Air Force EEO office issued a Final Agency Decision on February 20, 2004, dismissing Hopes' claim on the grounds that it was untimely, and based on its finding that the Air Force was not Hopes' employer.  (Def.'s Mem. Supp. Summ. J. Ex. 10.)  Hopes appealed that decision to the U.S. Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations ("OFO").  In a decision issued on June 16, 2004, the OFO affirmed the Air Force's holding, ruling that Hopes' claim was untimely.  (Def.'s Mem. Supp. Summ. J. Ex. 11.)

On October 15, 2003 and October 16, 2003, the respective commanders of Andrews and Bolling reconsidered and lifted the barment orders finding that the NCIC report was incorrect, and that Hopes had no significant criminal history.  On October 21, 2003, Hopes was reinstated as a meat cutter at the Bolling Commissary.  (Koren Decl. at ¶ 9.)

On September 14, 2004, Hopes filed the one-Count Complaint alleging race discrimination under Title VII.  As previously discussed, Hopes filed an Amended Complaint asserting four additional Counts on January 3, 2005.

## II.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are *material*. *Anderson*, 477 U.S. at 248. Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In that context, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, "[w]hen the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)). Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Celotex Corp.*, 477 U.S. at 322.  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment.  *Id*. at 252.  Furthermore, District Courts have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial."  *Felty v. Graves -Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)(citing *Celotex Corp.*, 477 U.S. at 323-24).

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial.  *Rachael-Smith v. FTDATA, Inc.,* 247 F. Supp. 2d 734, 742 (citing *Anderson*, 477 U.S. at 248-49).  Moreover, any inferences drawn from disputed evidence must be accorded to the non-moving party.  *See Matsushita,* 475 U.S. at 587-88; *Pulliam Investment Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

**B.    Motion to Dismiss**

Generally, when considering a Rule 12(b)(1) motion to dismiss based upon lack of subject matter jurisdiction, courts should accept the plaintiff's well-pleaded allegations as true and construe the complaint in favor of the plaintiff.  *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).  However, where, as here, the challenge is to the factual basis of subject matter jurisdiction, courts "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991).  The plaintiff bears the burden of

proving subject matter jurisdiction. *Id.* (citing *Adams,* 697 F.2d at 1219; *Trentacosta v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1559 (9th Cir.1987)).  When considering a factual challenge to the court's subject matter jurisdiction, "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists . . . ." *Id.*  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Furthermore, "[u]nlike the procedure in a Rule 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a Rule 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams,* 697 F.2d at 1219.

Only when the jurisdictional facts are intertwined with the merits of the dispute should the court decline to decide the jurisdictional issue. *Oram v. Dalton,* 927 F.Supp. 180, 184 (E.D.Va.1996) (citing *Adams,* 697 F.2d at 1219).   In this case, Defendants have moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  While there is some authority for the proposition that the nature of Defendants' challenge is based upon the merits, the United States Court of Appeals for the Fourth Circuit has held that the determination as to whether a defendant is an "employer" under Title VII is properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Woodard v. Virginia Bd. of Bar Examiners*, 598 F.2d 1345 (4th Cir. 1979).  Thus, the Court must weigh the evidence and make a determination as to the Court's subject matter jurisdiction over this matter. *See Oram,* 927 F.Supp. at 184.

**III.**   **DISCUSSION**

Defendant seeks summary judgment as to Count I of Plaintiff's Amended Complaint arguing

that the Air Force is not Plaintiff's employer for the purposes of Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and

based on the contention that Plaintiff failed to exhaust the administrative remedies required to maintain a

Title VII action.   Defendant also seeks to dismiss the remaining Counts of Plaintiff's Amended

Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that this Court

lacks subject matter over the claims asserted therein.   The Court first analyzes Defendant's Motion for

Summary Judgment as to Count I of Plaintiff's Amended Complaint, and concludes with an analysis of

Defendant's Motion to Dismiss Counts II-V of Plaintiff's Amended Complaint.   As discussed in the

sections that follow, the Court will grant both of Defendant's Motions.

**A.**      **Motion for Summary Judgment as to Count I–Title VII**

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race,

color, religion, sex, or national origin. 42 U.S.C. §§ 2000e, *et seq.*   However, Title VII did not

originally apply to discrimination in the federal workplace.   *King v. Dalton,* 895 F. Supp. 831, 836 (E.

D. Va.1995) (citing 42 U.S.C. § 2000e(b)).   "To remedy this, Congress amended Title VII in 1972 by

explicitly waiving the United States' sovereign immunity with respect to employment discrimination.

Equal Employment Opportunity Act of 1972, § 11, 42 U.S.C. § 2000e-16."   *Id.*   In addition,

"Congress created a separate and distinct provision to govern federal workplace discrimination." *Id.*

(citing § 2000e-16). "Significantly, the Supreme Court has held that § 2000e-16 'provides the

exclusive judicial remedy for claims of discrimination in federal employment.'"   *King,* 895 F. Supp. at

836 (citing *Brown v. General Servs. Admin.,* 425 U.S. 820, 835 (1976)).  Accordingly, the Air

Force's liability, if any, must be found in accordance with Section 2000e-16.  *See id.*

> Section 2000e-16 provides, in relevant part:
>
> All personnel actions affecting employees or applicants for employment ... in military
> departments ... shall be made free from any discrimination based on race, color,
> religion, sex, or national origin.

§ 2000e-16(a).  Thus, to maintain an action under Title VII, the plaintiff must be an "employee[ ] or

applicant[ ] for employment" of the defendant federal agency.

In this case, Plaintiff concedes that he is not a direct employee of the Air Force.  (*See* Pl.'s

Opp. at 4 ¶ 9).  Nonetheless, Plaintiff suggests that the Air Force is somehow liable under Title VII

based upon its relationship with DeCA.  In support of this contention, Plaintiff erroneously relies on the

factors enumerated in *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir. 1983) for

determining whether an individual is an "employee" under Title VII versus and independent contractor.

*Garrett* has no application in this case because there is no indication that Plaintiff had any employment

relationship whatsoever with the Air Force–albeit an employee or an independent contractor.  *See id.*

However, courts have recognized that an affiliated agency may be held liable as an employer under Title

VII if that agency exercises sufficient control over the plaintiff's direct employer.  *See, e.g., Johnson v.

Flowers Industries, Inc.,* 814 F.2d 978, 981 (4th Cir. 1987); *Hukill v. Auto Care, Inc.* 192 F.3d

437, 443 (4th 1999); *Glunt v. GES Exposition Services, Inc.,* 123 F. Supp. 2d 847 (D. Md. 2000)

(Williams, J.); *Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.,* 61 F. Supp. 2d 448 (D. Md.

1999) (Williams, J.).

The United States Court of Appeals for the Fourth Circuit has recognized four factors which are relevant to determining whether two distinct entities[1] may be deemed to be an "integrated employer" under Title VII: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999).  In applying the four-part test in these other contexts, courts "have focused on the second factor: centralized control of labor relations." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2nd Cir. 1995) (quoting *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir.1983) (noting that "this criterion has been further refined to the point that the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?")); *see also Hukill,* 192 F.3d at 444 (citing *Trevino* with approval).  Nonetheless, courts have also recognized that the four-part test "may also be satisfied by a showing that there is an amount of 'participation [that] is sufficient and necessary to the total employment process,' even absent 'total control or ultimate authority over hiring decisions.'" *Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983)  (quoting *Rivas v. State Board for Community Colleges and Occupational Education,* 517 F. Supp. 467, 470 (D.Colo. 1981)).

In this case, the fact that the DeCA commissaries for which Plaintiff worked happened to be located on United States Air Force bases is not enough to render the agency an "integrated employer" subject to liability under Title VII.  *See Hukill v. Auto Care, Inc.*, 192 F.3d at 442.   DeCA is an

---

[1] It not clear whether this, or any, agency test may be invoked to hold a distinct agency of the federal government liable as a joint employer.  Neither party briefed that issue.  Nonetheless, the Court assumes, for the sake of argument, that the agency principles do apply.

agency of the Department of Defense under the authority of the Under Secretary of Defense for

Personnel and Readiness.  (Koren Decl. at ¶ 3.)  The operations of the agency are overseen by the

Commissary Operating Board.  (*Id.*)  There is no indication there is any common management or

oversight between DeCA and the Air Force.  DeCA operates 274 military commissaries throughout the

world, on bases occupied by the United States Army, Navy and Air Force.  (*Id.* at ¶ 6.)  Furthermore,

the undisputed evidence indicates that Plaintiff, like the 16,000 other DeCA employees, was hired,

trained, disciplined, compensated, and otherwise managed exclusively by employees of DeCA.  (*Id.* at

7.)  Thus, the Air Force played no significant role in the overall labor relations of DeCA or in the

specific decisions relating to Plaintiff's employment.  Accordingly, the Air Force is not Plaintiff's

"employer" for the purposes of Title VII, and Defendant's Motion for Summary Judgment as to that

claim will be granted.

In addition, Plaintiff's Title VII claim also fails because Plaintiff failed to exhaust his

administrative remedies with regard to that claim.  Title 29 § 1614.105(a) (1) of the Code of Federal

Regulations ("CFR") provides that: "An aggrieved person must initiate contact with a Counselor within

45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within

45 days of the effective date of the action."  There is no dispute that Hopes' first contact with an EEO

counselor occurred on July 16, 2003.  (Def.'s Mem. Supp. Summ. J. Ex. 8.)  However, according to

Hopes, the discriminatory act occurred on April 8, 2003.  Thus, more than 100 days elapsed between

the act and the complaint.  Plaintiff does not dispute the fact that his claim is not timely.  (Pl.'s Mem.

Supp. Summ. J. at 7.)  However, Plaintiff suggests that the delay is "reasonable" and "excusable" under

the circumstances of the case.  (*Id.*)  Specifically, Plaintiff submits that he did not know that the barment

11

action was discriminatory until he realized that the Air Force staff was making no effort to correct the erroneous report.   Nonetheless, Plaintiff's belief or understanding about the motivations behind the barment action is of no moment.   The barment action is the only adverse employment action complained of in Plaintiff's EEO complaints, and it is the only such action which this Court finds cognizable under Title VII.   Moreover, as to the barment decision, Section 1614.105(a)(1) plainly sets forth an administrative requirement which Plaintiff did not follow.   Accordingly, Defendant's Motion for Summary Judgment will be granted on the additional grounds of Plaintiff's failure to exhaust administrative remedies.[2]

---

[2]Aside from the jurisdictional problems with Plaintiff's Title VII claim, summary judgment is also warranted under the substantive analysis of his claim. Plaintiff has presented only circumstantial evidence of race discrimination, therefore, he may avert summary judgment only under the three-step burden shifting "pretext" method established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 284-85 (4th Cir. 2004); *Nagy v. Baltimore Life Ins.*, Co., 49 F. Supp. 2d 822, 836 n.13 (D. Md. 1999) (declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory).  As the Court of Appeals for the Fourth Circuit recently reiterated:

> Under the *McDonnell Douglas* three-step framework, "the plaintiff-employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence.  If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action.  If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

*Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004), *quoting  Evans v. Technologies Applications & Serv. Co*., 80 F.3d 954, 959 (4th Cir. 1996).

To state a valid claim of racially disparate treatment, Plaintiff must first establish a prima facie case by showing that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; and (3) similarly situated employees outside his class received more favorable treatment.  *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 990-91 (D. Md. 1999), *aff'd*, 203 F.3d 822 (4th Cir. 2000).  Although Plaintiff has presented little evidence as to the third prong of the prima facie case, the Court assumes, for the sake of argument, that Plaintiff can adduce evidence sufficient to satisfy these elements.  However, Defendant has presented the Court with ample evidence of the fact that the barment decision was based entirely on the false NCIC criminal history report indicating that Plaintiff had an extensive criminal history.  Plaintiff has questioned neither the fact that the NCIC report was the actual reason for the barment nor on the reasonableness of the Air Force's reliance on that report.  Accordingly, Plaintiff has failed to demonstrate that Defendant's "explanation is 'unworthy of credence.'" *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir.2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).   As such, Defendant's Motion for Summary Judgment will be granted on the additional grounds that Plaintiff has failed to demonstrate pretext.  *See Rowe v. Marley Co*., 233 F.3d 825, 830 (4th Cir. 2000) (recognizing that, if the plaintiff cannot present facts that would

**B.**      **Defendant's Motion to Dismiss Remaining Counts (II-V)**

As previously noted, Defendant has filed a separate Motion to Dismiss the additional Counts

asserted in Plaintiff's Amended Complaint, to wit:  tortious interference with contractual relations under

Maryland law (Count II), violation of the Fifth and Fourteen Amendments to the United States

Constitution (Count III), intentional discrimination under 42 U.S.C. § 1981 (Count IV), and racial

discrimination under the Maryland Constitution (Count V).  Defendant's main argument in support of its

Motion is that the Air Force, as an agency of the federal government, is immune from suit as to the

Counts raised.

It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to

be sued . . . ."  *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted).

Moreover, all waivers of sovereign immunity must be "strictly construed ... in favor of the sovereign."

*Lane v. Pena,* 518 U.S. 187, 192 (1996).  For that reason, it is Plaintiff's burden to show that an

unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply

to his particular claim.  *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995).  If the plaintiff

fails to meet this burden, then the claim must be dismissed.  *Medina v. United States,* 259 F.3d 220,

223 (4th Cir. 2001).  Applying these principles, the Court will examine each of the Counts in Plaintiff's

Amended Complaint to determine whether such a waiver exists as to the particular cause of action.  As

discussed below, Counts II-V must be dismissed under the doctrine of sovereign immunity.

---

permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the
defendant should be granted).

### i.      <u>Count II–Maryland Law Tortious Interference</u>

Count II of Plaintiff's Amended Complaint purports to state a cause of action against the Air

Force for tortiuous interference with contractual rights under Maryland law.  In enacting the  Federal

Tort Claims Act ("FTCA"), Congress waived sovereign immunity with respect to certain torts

committed by federal employees.  28 U.S.C. §§ 1346; 2671-2680.  However, Congress specifically

exempted intentional torts.  In particular, the FTCA provides that "the provisions of this chapter and

section 1346(b) of this title *shall not apply to--*[a]ny claim arising out of assault, battery, . . . or

*interference with contract rights . . . .*"  28 U.S.C.A. § 2680(h) (emphasis supplied).  Furthermore,

Plaintiff has failed to identify any other provision through which Congress has "unequivocally waived"

immunity as to the claim of tortiuous interference.  *See Williams,* 50 F.3d at 304 (regarding the

plaintiff's burden to show waiver).  As such, Count II of Plaintiff's Amended Complaint is

jurisdictionally barred by virtue of the Air Force's sovereign immunity.

### ii.      <u>Count III–Violations of the Fifth and Fourteenth Amendments</u>

Count III of Plaintiff's Amended Complaint alleges violation of the Equal Protection Clause of

the Fifth and Fourteenth Amendments to the United States Constitution.  As a preliminary matter, the

Fourteenth Amendment, by its terms, applies only to the states, not to the federal government.  As to

the Fifth Amendment claim, courts have noted that "[t]he Constitution does not waive the Government's

sovereign immunity in a suit for damages."  *Garcia v. U.S.*, 666 F.2d 960, 966 (5th Cir. 1982) (citing

*Jaffee v. United States*, 592 F.2d 712, 715-18 (3d Cir.), cert. denied, 441 U.S. 961 (1979)).

Rather, [a]n immunity waiver, if it exists at all, must be found in the statute giving rise to the cause of

action.  *See id.*  Congress has not waived sovereign immunity for federal agencies for alleged violations

of the Equal Protection Clause of the Fifth Amendment.  *See Federal Deposit Insturance Corp. v. Meyer,* 510 U.S. 471, 484-86 (1994); *Jaffee v. United States*, 592 F.2d at 715-18.  Accordingly, the claims asserted in Count III of Plaintiff's Amended Complaint are unavailing as a matter of law.

### iii.      Count IV–Discrimination under Section 1981

In Count IV of his Amended Complaint, Plaintiff alleges intentional race-based discrimination under 42 U.S.C. § 1981.[3]  Generally, an aggrieved employee may maintain an action under both Section 1981 and Title VII.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).  However, as to federal employees, the Supreme Court has held that Title VII is "the exclusive individual remedy available to a federal employee complaining of job-related racial discrimination." *Brown v. General Services Administration,* 425 U.S. 820, 825 (1976).  In this case, Plaintiff is a federal employee complaining of alleged discrimination by an entity he claims to be his employer.  As a consequence, Plaintiff's exclusive remedy for the alleged actions is  under Title VII, and his claim under Section 1981 must be dismissed.[4]

---

[3] Section 1981 guarantees, *inter alia*, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts. . . ." 42 U.S.C. § 1981(a).  The Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071-1100, broadened the scope of claims actionable under the original 1866 text by defining the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all *benefits, privileges, terms, and conditions* of the contractual relationship." 42 U.S.C. § 1981(b) (emphasis added).

[4] Additionally, Plaintiff's Section 1981 claim fails because he cannot demonstrate pretext, as discussed in *supra* note 3.  The elements required to show a viable cause of action under the *McDonnell Douglas* framework are the same for Title VII and Section 1981.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (explaining that the legal standard is the same for claims brought simultaneously under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983); *see also Patterson* v. *McLean Credit Union*, 491 U.S. 164, 186 (1989) (applying Title VII analysis to claims brought under Section 1981).  Therefore, Plaintiff's failure to adduce evidence of pretext also renders his Section 1981 claim unavailing.

### iv.   <u>Count V–Race Discrimination under Maryland Law</u>

Count V of Plaintiff's Amended Complaint alleges a violation of Maryland Annotated Code Article 49B.  Article 49B identifies discriminatory practices that the Maryland Human Relations Commission has the authority to enforce.  However, Article 49B generally provides no private cause of action for individuals.[5]  *See Malina v. Baltimore Gas and Elec. Co.*, 18 F. Supp. 2d 596, 611 (D. Md. 1998) (citing *Jordan v. CSX Intermodal, Inc.,* 991 F. Supp. 754, 756, n.1 (D. Md.1998)); *see also Dillon v. Great Atlantic & Pacific Tea Co.,* 403 A.2d 406, 409 (Md. 1979).  Furthermore, as previously discussed, Plaintiff is a federal employee whose *exclusive* remedy for employment discrimination is Title VII.  *See Brown,* 425 U.S. at 825.  For these reasons, Count V of Plaintiff's Amended Complaint will be dismissed.

In sum, all of the Counts asserted in Plaintiff's Amended Complaint fail as a matter of law.

## IV.   <u>Conclusion</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment as to Count I of Plaintiff's Amended Complaint is GRANTED, and Plaintiff's Motion to Dismiss Counts II-V of Plaintiff's Amended Complaint is GRANTED.  A separate Order will follow.

/s/

_____
Richard D. Bennett
United States District Judge

Dated:   August 2, 2005

---

[5]The law does provide for a private right of action in limited circumstances, where discrimination occurs within certain counties in Maryland, but those exceptions are not applicable here.  *See generally* Article 49B.